IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| PAUL K. HOWE, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 3:14-CV-349 |
| § | |
| DERICK ADAMS, *et al.*, § | |
| § | |
| Defendants. § | |
| § | |

# MEMORANDUM OPINION AND ORDER

Plaintiff Paul K. Howe (formerly TDCJ #1473851, Nueces County Jail #19203179) filed a prisoner civil rights complaint under 42 U.S.C. § 1983, alleging that he was denied medical care after a correctional officer used excessive force against him while he was confined in the Texas Department of Criminal Justice ("TDCJ"). Howe is proceeding *pro se* and *in forma pauperis* (Dkt. 5). After Howe filed a more definite statement of his claims (Dkt. 30), the Court requested an answer from all three defendants listed in the complaint: Captain Derick Adams, Sergeant Tunde Akinsonu, and Senior Warden Mark Jones (Dkt. 36). Sergeant Akinsonu, the only defendant who was successfully served, has filed a motion for summary judgment (Dkt. 51). At the Court's request, the Texas Attorney General's Office has provided administrative records relevant to Howe's claims in a *Martinez* report (Dkt. 56),[1] which the Court has construed as a motion for summary judgment on behalf of the other defendants (Dkt. 57). To date,

---
[1] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1987).

Howe has not filed any response to the motions for summary judgment and his time to do so has expired.

After reviewing all of the evidence submitted, the parties' briefing, and the applicable law, the Court concludes that the defendants are entitled to summary judgment and that this case must be **DISMISSED** for the reasons that follow.

I.     <u>BACKGROUND</u>

When Howe filed his complaint in this case he was incarcerated at the Darrington Unit in Rosharon, Texas (Dkt. 1, at p. 3). Howe alleges that he was in the Darrington Unit infirmary on July 6, 2014, when Captain Adams attacked him from behind, got on top of him, and punched him in the face "5 or 6 times" (Dkt. 1, at p. 4). Howe maintains that the attack was unprovoked and accuses Adams of assault and battery (Dkt. 30, at p. 1). After the assault, Howe alleges that Sergeant Akinsonu refused him access to medical care for his bloody face and a cut on his elbow (*Id*. at pp. 2-3). Howe seeks compensatory and punitive damages from each defendant under 42 U.S.C. § 1983 for the violation of his constitutional rights (Dkt. 1, at p. 4).[2]

Sergeant Akinsonu has filed a motion for summary judgment, arguing that he is entitled to official and qualified immunity from Howe's claims against him (Dkt. 50). Both Sergeant Akinsonu and the *Martinez* report filed by the Attorney General's Office provide a copy of TDCJ Use of Force Report MA-03872-07-14 ("UOF Report"), which was completed as part of an administrative investigation of the incident that forms the

---

[2] Howe also seeks injunctive relief in the form of a transfer from the Darrington Unit (Dkt. 1, at p. 4). Because the record reflects that Howe has been released from TDCJ, his request for injunctive relief is moot.

basis of Howe's complaint (Dkts. 51-1, 56-2). The UOF Report includes numerous witness statements from officers and other offenders who were present in the infirmary when the use of force occurred and also includes a video recording of its aftermath (Dkt. 56-3), all of which offers a starkly different account of the incident from the one described by Howe.

The UOF Report reflects that officers were called to the Darrington Unit medical department on July 6, 2014, after Howe became belligerent and started screaming profanity-laced racial epithets at a nurse (Nurse Brown) (Dkt. 56-2, at pp. 12, 24, 26, 27). Numerous witness statements indicate that Adams took Howe to the ground because Howe lunged over a counter in an attempt to attack Nurse Brown, who had refused to give Howe the snack he preferred (*Id*. at pp. 18, 20, 24, 27). During the struggle that ensued, Adams punched Howe in the face three times after Howe repeatedly tried to bite him (*Id*. at pp. 14, 18, 24, 26, 27). A video recording taken by officers who arrived shortly after Howe was subdued (*Id*. at pp. 22-23), shows that Howe continued to threaten and curse at Nurse Brown while he was restrained by other officers (Dkt. 56-3, at 4:10-40). At one point, Howe is heard to exclaim: "I tried to attack you. I tried to kill you, bitch. You're a ho. You're a fucking ho. You need killing, bitch. You'll never refuse me water again." (*Id*. at 5:00-5:20). The video shows that Howe repeatedly threatened other TDCJ personnel throughout the incident, using racial slurs and other abusive language as officers escorted him from the infirmary (*Id*. at 1:33-5:25).

Shortly after the use of force occurred Howe was examined by a different nurse, who determined that he sustained a "small cut" to his upper left forehead as a result of the

3

altercation (Dkt. 56-2, at pp. 22-23, 35-36). Howe refused treatment for the minor injury, which was documented with a photograph (*Id*. at 35-36). Medical records show that Howe was treated in the clinic several days later on July 10, 2014, when he complained only of a "scrape on his elbow" as the result of an altercation (Dkt. 56-4, at p. 30). He was treated with a topical antibiotic (Bactrim) and given over-the-counter pain medication (Tylenol) for the abrasion ("soft tissue/cellulitis") (*Id.*). Howe was seen in the clinic again for other issues on July 21, 2014, but made no mention of any lingering injury stemming from the altercation that occurred on July 6, 2014, and had "no healthcare related complaints" at that time (*Id*. at pp. 32-33).

Howe was charged with attempting to assault Captain Adams during the use-of-force incident in the Darrington Unit infirmary on July 6, 2014 (Dkt. 56-2, at pp. 39-41). Howe was convicted of those charges and lost all of his previously earned good-time credit as punishment (Dkt. 30, at p. 4).

## II. STANDARDS OF REVIEW

### A. The PLRA and *Pro Se* Pleadings

Because the plaintiff is an inmate proceeding *in forma pauperis*, the Court is required by the PLRA to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); see also 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state

4

a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). An administrative report submitted by state officials pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (a "*Martinez* report"), is a tool to assist courts in making a determination of frivolity under 28 U.S.C. § 1915. *See Norton v. Dimazana*, 122 F.3d 286, 292-93 (5th Cir. 1997); *see also Cay v. Estelle*, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a *Martinez* report).

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff in this case proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "labels and conclusions' or a 'formulaic recitation of the elements of a cause of action[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted).

### B. Summary Judgment — Rule 56

Sergeant Akinsonu has filed a motion for summary judgment (Dkt. 50) and the Court has construed the *Martinez* report filed by the Attorney General's Office as a motion for summary judgment on behalf of the other defendants (Dkt. 57). Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is

5

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the movant meets this initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *See Celotex*, 477 U.S. at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence). Likewise, Rule 56 does not impose upon the Court a duty to sift through the

record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Although the plaintiff in this case is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016) (citing *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require pro se parties to fundamentally abide by the rules that govern the federal courts . . . . *Pro se* litigants must properly . . . present summary judgment evidence") (quotation marks omitted)).

Howe has not responded to the motion for summary judgment filed by Sergeant Akinsonu or the *Martinez* report submitted by the Texas Attorney General's Office. The Court's most recent order directing Howe to respond has been returned "undeliverable," indicating that Howe is no longer in custody.[3] Howe has not provided an updated address

---

[3] The record shows that Howe was in custody at the Nueces County Jail in Corpus Christi when Sergeant Akinsonu filed his summary judgment motion on December 12, 2017 (Dkts. 51, 52). After *Martinez* report was filed on January 12, 2018, the Court issued an Order on February 21, 2018, directing Howe to respond within thirty days (Dkt. 57). That Order was sent to the Nueces County Jail, which remains Howe's address of record. The Order was returned on March 5,

7

as required by this Court's local rules, which require *pro se* litigants to provide the Court with an accurate, current address.[4] Therefore, he appears to have abandoned his complaint. Notwithstanding the plaintiff's failure to respond, summary judgment may not be awarded by default "simply because there is no opposition, even if the failure to oppose violated a local rule." *Hibernia Nat'l Bank v. Administration Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985). "However, a court may grant an unopposed summary judgment motion if the undisputed facts show that the movant is entitled to judgment as a matter of law." *Day v. Wells Fargo Bank Nat'l Ass'n*, 768 F.3d 435, 435 (5th Cir. 2014) (citation omitted); *see also Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). After considering all of the pleadings and exhibits under the applicable standards of review, the Court concludes that Howe fails to show that the defendants violated his constitutional rights for purposes of liability under 42 U.S.C. § 1983, and that his claims are barred by official and qualified immunity for reasons discussed in more detail below.

## III. DISCUSSION

### A. The Defendants are Entitled to Official Immunity

The defendants argue that they are entitled to immunity under the Eleventh Amendment from claims for monetary damages against them in their official capacity as

---

2018 (Dkt. 58), with an advisory that Howe is no longer in custody. Court personnel contacted the Jail and were advised that Howe has been released.

[4] *See* S.D. Tex. L.R. 83.4 (Effective May 1, 2000). Howe was advised of this rule and instructed to notify the court in writing of any change of address in an Order entered on November 18, 2014, granting him leave to proceed *in forma pauperis* (Dkt. 5, at p. 2). The Order warned Howe that the failure to file a change of address notice "may result in this case being dismissed for want of prosecution" (*Id.*).

state employees. Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state, including a state agency. *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002). The Eleventh Amendment bars a suit for money damages against TDCJ, as a state agency, under 42 U.S.C. § 1983. *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). The Eleventh Amendment also bars a suit for money damages against TDCJ employees in their official capacity. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).

Because all of the individual defendants in this case are sued for actions taken during the course of their employment with TDCJ, the claims against them in their official capacity as state employees are barred by the Eleventh Amendment. Accordingly, the defendants are entitled to summary judgment on this issue.

### B. The Defendants are Entitled to Qualified Immunity

The defendants argue further that they are entitled to qualified immunity from the claims against them in their personal or individual capacity and that this case must be dismissed as a result. Public officials acting within the scope of their authority generally are shielded from a suit for monetary damages by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff seeking to overcome qualified immunity must satisfy a two-prong inquiry by showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). The defense of qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 355, 341 (1986).

As this standard reflects, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016) (internal quotation marks and citations omitted). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Id*. at 654 (citation and internal quotation marks omitted). A plaintiff does not satisfy this burden with conclusory allegations and unsubstantiated assertions of wrongdoing. *See Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 643-44 (5th Cir. 2014); *Geter v. Fortenberry*, 849 F.2d 1550, 155 (5th Cir. 1988).

### 1. Claims Against Captain Adams

Howe contends that Captain Adams violated his rights by using assaulting him or using excessive force against him for no reason (Dkt. 30, at pp. 2-3). Claims of excessive force in the prison context are governed by the Eighth Amendment, which prohibits cruel and unusual punishment. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 319-21 (1986). Not every malevolent touch by a prison guard gives rise to a constitutional violation under the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")). Recognizing that force is often necessary in the prison setting "to preserve

internal order and discipline and to maintain institutional security," the Supreme Court has held that the "core judicial inquiry" in evaluating an excessive-force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. Relevant factors to consider in evaluating such a claim include: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See id*. at 7 (citation omitted); *see also Cowart v. Erwin*, 837 F.3d 444, 452-53 (5th Cir. 2016) (reciting the "well-known *Hudson* factors").

As outlined above, the UOF Report and the medical records reflect that Howe suffered minimal injury as a result of the use of force, which was only necessary because of Howe's belligerent behavior. Numerous witness statements reflect that Captain Adams used force only because Howe tried to attack Nurse Brown and that Adams only struck Howe three times after Howe tried to bite Adams during the ensuing struggle. The witness statements and the video recording, in which is overheard Howe boasting about trying to attack Nurse Howe, contradict Howe's claim that the use of force was unprovoked. Although a court is required to draw inferences in favor of the non-movant when the defense of qualified immunity has been asserted, *see Tolan v. Cotton*, — U.S. —, 134 S. Ct. 1861, 1866 (2014), "a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." *Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir.

2015) (quoting *Scott v. Harris*, 550 U.S. 372, 380-81 (2007)). Because the video and the UOF Report demonstrate that force was used in a good-faith effort to restore order and not maliciously or sadistically for the purpose of causing harm, the Court concludes that Howe fails to show that excessive force was used in violation of the Eighth Amendment. Absent a genuine issue of material fact about whether constitutional violation occurred, Captain Adams is entitled to qualified immunity from the claims against him.

### 2. Claims Against Sergeant Akinsonu

Howe contends that Sergeant Akinsonu refused him access to medical care for the injuries Howe sustained during the use of force (Dkt. 30, at p. 2). A prison official's "deliberate indifference to serious medical needs of prisoners" poses a violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required. *See Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006) (citation omitted). To establish deliberate indifference, the prisoner must show that the defendant was both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) subjectively drew an inference that such potential for harm existed. *See Farmer*, 511 U.S. at 837. Under the subjective prong of this analysis, a prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it." *Id*. at 847.

The Eighth Amendment deliberate indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotation marks omitted).

Because the UOF Report and medical records for the time period in question demonstrate that Howe was examined shortly after the use of force and refused treatment for the "small cut" on his forehead, Howe's claim that he was denied medical treatment in violation of the Eighth Amendment is without merit. *See Varnardo v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991); *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference claim where medical records document that the prisoner was not denied medical attention). The medical records further reflect that Howe was treated with antibiotics and Tylenol four days after the use of force occurred for an abrasion on his elbow. To the extent that Howe contends that his access to care was delayed, he does not show that he suffered substantial harm as a result of the delay. *See Rogers v. Boatright*, 709 F3d 403, 410 (5th Cir. 2013) (noting that "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that *results in substantial harm*") (emphasis in original).

More importantly, Howe does not otherwise show that any delay in receiving care was attributable to deliberate indifference on Sergeant Akinsonu's part. Howe has made no effort to show that a genuine issue of material fact remains for trial where his claims against Sergeant Akinsonu are concerned. Because the record does not otherwise disclose any fact issue, Sergeant Akinsonu is entitled to qualified immunity and summary judgment on the claims against him.

### 3. Claims Against Senior Warden Mark Jones

Howe appears to contend that Senior Warden Jones is liable in his supervisory capacity for failing to stop abuse inflicted by officers under his command (Dkt. 1, at p. 3). It is well established, however, that a supervisory official is not liable under § 1983 for the actions of subordinates on any theory of vicarious liability. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-95 (1978) (holding that supervisory officials cannot be held vicariously liable for their subordinates' actions under § 1983); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[S]upervisory liability is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Supervisory officers . . . cannot be held liable under § 1983 for the actions of subordinates . . . on any theory of vicarious liability."). Supervisory officials can be held liable under § 1983 only if the plaintiff demonstrates (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation. *See Evett v. Deep East*

*Tex. Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987).

Howe does not allege that Senior Warden Jones had any personal involvement in the incident that forms the basis of his complaint. Absent personal involvement or a sufficient causal connection with wrongful activity, Howe fails to show that Senior Warden Jones engaged in conduct that violated his constitutional rights for purposes of establishing liability under § 1983. Accordingly, Jones is entitled to summary judgment on the claims against him.

In conclusion, Howe has not met his burden to show that any one of the defendants violated a constitutional right, much less that any such right was clearly established at the time of the incident which forms the basis of his complaint. As a result, he has not overcome the defense of qualified immunity. Accordingly, the defendants are entitled to summary judgment on this issue as well.

## IV. CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The motion for summary judgment filed by Sergeant Tunde Akinsonu (Dkt. 50) is **GRANTED.**

2. The *Martinez* report, which has been construed as a motion for summary judgment on behalf of Defendants Derik Adams and Warden Mark Jones (Dkt. 55) is **GRANTED**.

3. The complaint filed by Plaintiff Paul K. Howe is **DISMISSED** with prejudice.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties and to *amicus* counsel of record for the defendants.

SIGNED at Galveston, Texas, this 22nd day of March, 2018.

_George C. Hanks Jr._
George C. Hanks Jr.
United States District Judge